NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**IN RE: MARK ALFRED GREENSTEIN,**
*Appellant*

_____

2019-1117

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 12/851,021.

_____

Decided: June 10, 2019

_____

MARK ALFRED GREENSTEIN, Bethesda, MD, pro se.

JOSEPH MATAL, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, AMY J. NELSON, PHILIP J. WARRICK.

_____

Before LOURIE, MOORE, and TARANTO, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Mark A. Greenstein appeals from a decision of the Patent Trial and Appeal Board (the "Board"), which affirmed the rejection in the U.S. Patent and Trademark Office (the "PTO") of pending claims 1–3 and 5–12 of U.S. Patent

Application 12/851,021 (the "'021 application"), as directed to ineligible subject matter under 35 U.S.C § 101 and as obvious under 35 U.S.C. § 103. *See Ex Parte Mark A. Greenstein*, No. 2016-6727, 2018 WL 1029142 (P.T.A.B. Feb. 1, 2018) ("*Decision*"), *modified on reh'g*, (Apr. 13, 2018). Because the Board correctly concluded that the claims are directed to an abstract idea and recite no other inventive concept, we *affirm*.

BACKGROUND

The '021 application purports to solve the financial risk of outliving one's savings by disclosing a "new and innovative program for the cost effective investment of funds as well as provision of longevity income through collective investment." SAppx46. As is relevant to this appeal, the '021 application discloses various options for improving investment management by better allocating risk and returns among plan participants based upon their age or stated investment goals—in essence, a new and improved annuity. *See* SAppx42–43 ("Therefore the present disclosure combines an insurance product which is a deferred annuity . . . with an investment account."). Some of the '021 application's embodiments also involve the use of computers to store, transmit, or display investment data. *See, e.g.*, SAppx49 ("These activities are implemented using computer programs/software which is operatively connected to computers.") Claim 1 is representative and reads as follows:

> 1. A method for allocation of investment returns for at least one investor in a collective investment vehicle comprising the steps of:
>
> storing personal information corresponding to the investor in a computerized database;
>
> using at least one computer to assign[] an investment return to the investor which assigned return is different from the investment return assigned to

at least one other investor in the collective investment vehicle;

using at least one computer to change the investment return assigned to the investor at least one time;

using at least one computer to effect at least one change to the investment returns through internal mechanisms of the collective investment vehicle which transfers returns between investors in the investment vehicle;

using at least one computer to make corresponding changes to the investment returns assigned to at least one other investor in the collective investment vehicle; and

using at least one computer to track and compute the transfers between investors in the collective investment vehicle.

SAppx33.

The claims were rejected under § 101 as directed to an abstract idea, under § 103 as obvious, and under § 112 as lacking written description. On appeal, the Board reversed the written description rejection but affirmed the rejections for obviousness and ineligibility. The Board held that the claims are directed to "the abstract idea of effecting changes to an investment fund," *Decision*, 2018 WL 1029142, at *4, and rejected Greenstein's argument that the invention is "rooted in computer technology" because the tasks of executing transactions in an investment fund and allocating returns are conventional business activities that, given enough time, a human could perform manually, *id.* In addition, the Board agreed with the examiner that the claims fail to recite an inventive concept because they invoke computer technology solely for its generic functions of data analysis, storage, and display, and they "only link[]

the abstract idea to the particular technological environment." *Id.*

Greenstein appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

We review the Board's legal determinations *de novo*, *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), but we review the factual findings underlying those determinations for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Patent eligibility under § 101 is a question of law that can include subsidiary questions of fact. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101. But the Supreme Court has long interpreted these categories as excluding "laws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

In *Alice*, the Supreme Court set forth a two-step test to determine patent eligibility under § 101. 573 U.S. at 217–18. First, we determine whether the claims are directed to an abstract idea. If so, the claim may still be patent-eligible if it contains an "an inventive concept—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72–73 (internal quotation marks omitted)).

Greenstein principally argues that the claimed method of allocating investment returns is novel and thus provides the requisite inventive concept. He contends that the invention differs from prior art investment models because the fund may be rebalanced without having to buy or sell additional securities. As a result, the investors can achieve a desired balance of risk and return in their portfolios, yet also avoid trading on electronic markets, which, as Greenstein points out, have been subject to various infirmities over the years. In addition, Greenstein argues that, like the claims at issue in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), the claimed method contains an inventive concept because it is "necessarily rooted in computer technology." *Id.* at 1257. Greenstein argues that computer-implementation of his investment strategy provides an inventive concept for his claims because use of a computer to store information and execute transactions is vastly more efficient.

The PTO argues in response that the Board correctly held that the claims are directed to the abstract idea of allocating returns within an investment fund, a fundamental business practice. The PTO contends, moreover, that the claims lack any further inventive concept because they only require "us[e] of at least one computer," and *Alice* bars "wholly generic computer implementation" of an abstract idea. 573 U.S. at 223–24.

We agree with the PTO that the claims are ineligible for patenting under § 101. First, as the Board concluded, the claims are directed to the abstract idea of allocating returns to different investors in an investment fund, a fundamental business practice that long predates computer technology. *Decision*, 2018 WL 1029142, at *4. Claim 1 involves storing information about each investor in a database, changing the investment returns assigned to at least

two of them, and using the computer to keep track of the transfers between investors in the fund. This is simply the "automation of the fundamental economic concept," *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015), of allocating investment returns to different investors within a common investment fund. We have long held that such basic management of business information is an abstract idea. *See id.* (collecting cases). As a result, we conclude that the Board correctly held that the claims are directed to the abstract idea of allocating returns in an investment fund.

Nor do the claims recite any further inventive concept. The claims only invoke a computer as a generic tool to store information and record transactions; in times past, these activities could have been performed with pen and paper. As the PTO points out, *Alice* clearly held that "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." 573 U.S. at 223. We have also rejected the argument, which we understand Greenstein to make, that performing calculations on a computer provides an inventive concept because the computer is much faster and more efficient. *See, e.g.*, *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."). Thus, using a computer to perform arithmetic does not provide an inventive concept.

Greenstein also contends that the Board failed to find that the claimed method of rebalancing an investment fund was entirely conventional. We note that this argument confuses eligibility with novelty. Here, the alleged novelty of Greenstein's investment strategy—an abstract idea—is immaterial to the claims' eligibility for patenting under § 101. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a *new*

abstract idea is still an abstract idea."); *see also SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("No matter how much of an advance in the finance field the claims recite, the advance lies entirely in the realm of abstract ideas, with no plausibly alleged innovation in the non-abstract application realm."). Thus, we conclude that the Board did not err in holding that Greenstein's claims are ineligible for patenting under § 101, and, accordingly, we need not review its obviousness ruling.

CONCLUSION

We have considered the parties' remaining arguments but find them unpersuasive. For the foregoing reasons, we conclude that the claims are ineligible under § 101 and therefore *affirm* the decision of the Board.

**AFFIRMED**