NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: JEANNINE A. STURGEON,**
*Appellant*

---

2020-1644

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 14/212,028.

---

Decided: January 12, 2021

---

DAVID E. BENNETT, Coats & Bennett, PLLC, Cary, NC, for appellant. Also represented by WILLIAM GABRIEL PAGAN, BRANDEE WOOLARD.

MOLLY R. SILFEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

---

Before LOURIE, DYK, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

Patent applicant Jeannine A. Sturgeon appeals a decision of the United States Patent Trial and Appeal Board ("Board") affirming the Examiner's rejection of her

application under 35 U.S.C. § 101. Because the Board properly determined that Sturgeon's application claims unpatentable subject matter under § 101, we *affirm*.

## BACKGROUND

This case involves U.S. Patent Application No. 14/212,028 ("the '028 application"). The '028 application was originally filed on March 14, 2014, with a single claim. In a preliminary amendment filed March 17, 2014, Sturgeon canceled the original claim and added independent claims 2, 10, and 17, and dependent claims 3–9, 11–16, and 18–20. On August 10, 2016, the United States Patent and Trademark Office ("Office") issued a restriction requiring Sturgeon to elect between two groups of claims: either claims 2–9 and 17–20, or claims 10–16. On October 4, 2016, Sturgeon elected claims 2–9 and 17–20 without traverse and subsequently withdrew claims 10–16.

Sturgeon and the Director of the United States Patent and Trademark Office ("Director") agree that claim 2 is representative. Claim 2 discloses:

> A method of creating a floral arrangement on an electronic display screen, the method comprising:
>
> selecting a flower from an image library comprising a plurality of images for the flower, the plurality of images including images of the flower from different angular positions;
>
> placing the flower at a user-selected location in a floral arrangement that is displayed on an electronic display screen;
>
> dynamically selecting one of the plurality of images of the flower based on the location of the flower in the floral arrangement; and
>
> displaying the selected flower image in the floral arrangement displayed on the display screen.

'028 application.

On April 5, 2017, the Examiner issued a final rejection of claims 2–9 and 17–20 as ineligible under 35 U.S.C. § 101 and anticipated under § 102. Sturgeon appealed to the Board. The Board affirmed the rejections under § 101 and reversed the rejections under § 102. Sturgeon appealed to this court.

## DISCUSSION

We review the Board's legal determinations de novo, *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), including patent eligibility under § 101, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). We review underlying factual findings for substantial evidence. *Elsner*, 381 F.3d at 1127 (citing *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000)).

## I

The question of eligibility under § 101 is governed by the two-step framework set out by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012).

In the first step of the inquiry, we must "determine whether the claims at issue are directed to" a patent-ineligible concept, i.e., a law of nature, natural phenomenon, or abstract idea. *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 77). "If the claims are not directed to a patent-ineligible concept under *Alice* step 1, 'the claims satisfy § 101 and we need not proceed to the second step.'" *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018) (quoting *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018)).

Conversely, if we find the subject matter abstract in the first step, we must proceed to the second step, in which "we consider the elements of each claim both individually and

'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79). That is, the second step must reveal an "inventive concept" to "ensure that the patent in practice amounts to significantly more than a patent upon" an ineligible concept. *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72–73).

For us to find an "inventive concept" in the second step, the patent must do more than recite an abstract idea "while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72). "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82. In particular, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223 (summarizing survey of case law).

II

Sturgeon concedes that merely creating a floral arrangement using a computer is an abstract idea, but at step 1, she argues that the claim is not abstract because it adds an element of realism to the floral arrangement. The Board properly found that the claim is directed to "mental processes," "the abstract idea of managing personal behavior," and "methods of organizing human activity"—in this case, arranging flowers—and is thus abstract at step 1. *See* J.A. 7–8. As we have explained, methods

> which can be performed entirely in the human mind are unpatentable . . . because computational methods which can be performed *entirely* in the human mind are the types of methods that embody the "basic tools of scientific and technological work" that are free to all men and reserved exclusively to none.

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1378 (Fed. Cir. 2016) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011)). The Board correctly determined that claim 2 is directed to an abstract idea.

At step 2, Sturgeon argues that claim 2 involves an inventive concept by specifying that an image of the flower at an appropriate angle must be selected from an image library based on the location the user has selected for placing the flower. The Director responds that the '028 application lacks an inventive concept because it does not describe any specific steps that the computer takes to select an appropriate image from an image library and does not disclose an improvement in computer technology.

We agree with the Director and the Board that claim 2 is not directed to an inventive concept as required under the second step of *Alice*. Claim 2 recites a method of "*selecting* a flower from an image library," "*placing* the flower at a user-selected location," "*dynamically selecting*" an image from the library based on the chosen location, and "*displaying* the selected flower . . . on the display screen." '028 application (emphases added). As the Board properly found, these steps do not differentiate the claim from ordinary mental processes and conventional computer activity. All of these elements are described at a high level of generality and require only generic computer implementation. There is no inventive concept here that meaningfully adds to the existing practice of simulating a floral arrangement by creating a digital collage—which Sturgeon concedes is an abstract idea performed on a conventional computer. *See* Appellant's Br. at 18. Nor do the highly general recitations of claim 2 disclose any improvement in computer functionality.

In these respects, this case is distinguishable from *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), and *DDR Holdings, LLC v.*

*Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). In those cases, we found that the claimed inventions improved computer functionality and recited more than generic computer implementation. *See McRO*, 837 F.3d at 1314 (quoting *Alice*, 573 U.S. at 223) ("It is the incorporation of the claimed rules, not the use of the computer, that 'improved [the] existing technological process'" (alteration in original).); *DDR Holdings*, 773 F.3d at 1257–59 ("[T]he claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.").

Because claim 2 lacks an inventive concept, it fails to "amount[] to significantly more than a patent upon" an ineligible abstract idea. *See Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72–73). The '028 application is therefore ineligible under § 101.

**AFFIRMED**